HICKMAN et al. v. MISSOURI, K. & T. RY. CO.

(Circuit Court, W. D. Missouri, C. D. October 17, 1899.)

1. JURISDICTION OF FEDERAL COURTS—SUIT BY STATE RAILROAD COMMISSIONERS —REMOVAL.

A suit brought by the railroad commissioners of Missouri, under the statutes of the state, against a railroad company, to enforce obedience to an order of the commission fixing rates, is not one in effect on behalf of the state, or in which the state is the real party in interest, so as to prevent its removal from a state to a federal court by the defendant, where the statutory grounds for removal exist. The real parties in interest in such a suit are the carrier and its patrons, and the state is interested only in a governmental sense.

2. SAME.

Neither the fact that a state appropriates money in aid of suits brought by its railroad commissioners, to be paid out, on their requisition, in payment of expenses and costs audited by the state auditor and approved by the governor, nor a statute authorizing the imposition of fines and penalties by a court upon railroad companies refusing to conform to rates fixed by the commission, which fines and penalties are paid into the school fund, makes the state a party, within the meaning of the eleventh constitutional amendment, to a suit by the commissioners against a railroad company, in which the only issue is the validity of rates fixed by them.

3. REMOVAL OF CAUSES—WAIVER OF RIGHT.

Where a state court denies a petition for removal, and the defendant thereupon causes a transcript of the record to be filed and docketed in the federal court, and such petition and record disclose good grounds for removal, the state court is without jurisdiction to proceed further, and the defendant does not, by further appearing and contesting the case therein, waive his right to proceed in the federal court.

On Motion to Remand to State Court.

Edward C. Crow, Atty. Gen., for complainants.
George P. B. Jackson, for defendant.

PHILIPS, District Judge. The motion to remand this cause was submitted at the last term of court. The essential facts of record are as follows: On the 21st day of October, 1895, plaintiffs filed their petition in the state circuit court of Cooper county, Mo., against the defendant railroad company, a citizen of the state of Kansas, which, in substance, recited that the defendant company was controlling and operating a railroad bridge over the Missouri river at Boonville, Mo., as a part of, or in the use of, its line of railroad; that complaints having been made to plaintiffs, as the board of railroad and warehouse commissioners, that arbitrary, illegal, and improper charges had been made by defendant for carrying passengers and freight over said bridge, the commissioners had, after notice, examined into the reasonableness of such charges, and, becoming satisfied that the complaints were reasonable, had issued an order establishing a reduced rate of charges; and that the defendant company was nevertheless proceeding, in disregard of the action of the commissioners, to exact a higher rate. They prayed for an injunction, or such other process, mandatory or otherwise, as might be necessary in the premises to restrain the defendant from further continuing to violate the findings of the plaintiffs. The defendant, being duly summoned, appeared in said court on the 21st day of October, 1895, and filed its

97 F.—8

petition for removal of the cause into the United States circuit court for this district. The petition was in due form, alleging that the defendant was at the times aforesaid, and then was, a nonresident, —a citizen of the state of Kansas,—and that plaintiffs were resident citizens of this district, and that the amount of the subject-matter in dispute in the suit, exclusive of interest and costs, exceeded the sum and value of $2,000, and presented therewith the required bond. This petition for removal the court overruled on the 30th day of October, 1895. Thereupon the defendant had made out a transcript of the record and proceedings, and filed the same in this court on the 4th day of March, 1896, before the first day of the next term of court. By leave and under order of the court the defendant afterwards, to wit, on the 23d day of April, 1898, filed its answer herein, which tendered the general issue as to the averments respecting its dereliction of duty, and pleaded specifically that the action taken by the railroad commissioners in the regulation and establishment of tariff rates over said bridge was irregular, and not in conformity to the statute of the state under which the commissioners claimed to have acted. It further pleaded that said railroad bridge was and is an independent corporation from the defendant company, authorized to be built under an act of congress, and that the bridge company had the authority and power to collect tolls for freight and passengers passing over said bridge; that in order to raise the money to construct said bridge the bridge company issued its bonds for a large amount, to wit, the sum of $1,000,000, bearing interest at the rate of 7 per cent. per annum; that thereafter the defendant, in order to obtain the use of said bridge for crossing its trains, passengers, and freight thereover, entered into a contract with the bridge company by which it undertook to guaranty the payment of the interest upon the bonds of said bridge company in consideration of the privilege of the use of the bridge; and that as a part of said agreement it was stipulated that all tolls arising from the passing of freight and passengers over said bridge should be appropriated to the payment of said interest, and to create a sinking fund for the payment of the principal of said bonds; that accordingly under said agreement the defendant collected the stipulated tolls from passengers and freights passing over said bridge, and deposited the same as a fund (1) to meet each accruing interest payment, and (2) the surplus of tolls so collected in each year were set apart in a proper depository to take up the principal of said bonds, defendant agreeing in said contract that the tolls should amount in each year to the sum of $70,000, being the total interest charge which the defendant was required to pay; that the defendant was operating said bridge under and in pursuance of said agreement and arrangement, and was collecting tolls from all persons and on all freight passing over said bridge, and appropriating and setting aside the proceeds therefrom as by said contract required; that said tolls are not charged for the transportation or hauling of passengers or freight, but are purely tolls for passing and crossing over said bridge; that, while they are collected immediately by the defendant, they are collected by it as the agent and representative of said bridge company, whose property said tolls become as

soon as collected, and that therefore said tolls charged have no connection with the rates or fares charged the passengers traveling upon the defendant's railroad, nor with the rates of freight charged for freight hauled over said railroad; that such tolls so charged and collected by the defendant are authorized by the act of congress authorizing bridge companies, and by the incorporation of said bridge company under the laws of the state of Missouri; and that therefore the action of the complainants is in violation of the contractual rights of the defendant. On June 6, 1898, the plaintiffs filed their reply to the answer, which pleads, in substance, that after said petition for removal from the state court had been overruled by the court the defendant appeared therein and filed motion for a continuance of the cause, by which act, the reply claims, the defendant abandoned its said motion to transfer the cause to the United States court, and waived the objection to the jurisdiction of the state circuit court, and that afterwards the state court took up the cause and entered a decree therein in favor of the complainants; that thereafter the defendant filed a motion for new trial and in arrest of said judgment, whereby, the reply claims, the defendant abandoned its action theretofore taken for the removal of the cause, and waived its objection to the jurisdiction of the state circuit court, which motion the state circuit court overruled, and the defendant took an appeal therefrom to the supreme court of the state, by which action, it is alleged, it again abandoned its objection to the jurisdiction of the state court. The reply further tendered the general issue as to the new matter pleaded in the answer. And on the same day, to wit, June 6, 1898, the complainants filed herein a motion to remand this cause to the state court for the reason (1) that this court has no jurisdiction to try and determine the same; (2) because the petition for removal of the cause was properly overruled; (3) because the defendant by its action subsequently taken in the state court waived its objection to the jurisdiction of that court; (4) because the judgment of the state circuit court is final.

When this motion to remand was taken up and submitted at the last term of this court, the only ground suggested by the attorney general of the state in its support was that the action was in fact and law one in behalf of the state, and the state was and is the real party in interest, and therefore the cause was not removable into this court. This is the only question presenting any reasonable ground for debate.

From the statement of facts, it appears that, after the transcript of record from the state court was filed and the cause docketed in this court, the plaintiffs, without raising the objection to the jurisdiction of this court on the ground that the state is a party, entered their appearance herein, and, inter alia, by their replication took issue on the merits of the case with the defendant. As between individual suitors, this would have been such an appearance as to amount to a waiver of any question of jurisdiction over the person of the parties. It might therefore be an interesting question, if the plaintiffs, as contended for in the motion to remand, represent the state, whether the state had not thus given its consent to try this controversy in the

United States court. If the exemption of the state against being brought into the federal court is a personal privilege, it is one that may be waived; but whether or not it would require legislative action to signify such waiver need not be considered in this case, as I prefer to place the decision of this question upon the broader ground established by the decisions of the supreme court of the United States.

The state is not named as a party. The court, however, may look through the record and ascertain whether or not, although not named as such, the state is in fact a real party. If the state is a real party in interest, in the absence of a controlling question arising under some federal law or the constitution, the suit is not removable from the state to the United States circuit court. Ames v. Kansas, 111 U. S. 449, 4 Sup. Ct. 437; Stone v. South Carolina, 117 U. S. 431, 6 Sup. Ct. 799. I had supposed, however, that the question as to whether, in a suit like this, between state railroad commissioners by name and a nonresident citizen of the state, the state is a party, was settled by adjudications of the supreme court of the United States. Mr. Justice Lamar, in Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, reviewed the decisions of that court bearing more or less directly upon the question here involved. In that case the bill was lodged against the land commissioners of the state of Oregon et al., to restrain the state officers from doing acts alleged to be a violation of complainant's contractual rights with the state. The jurisdiction of the federal court was challenged, as in this case, on the ground that, although the state was not named as a party, yet it was against the land commissioners, who were officers of the state, acting under its authority, and therefore the state was, in effect, a party to the suit. This contention was answered in the negative, and the jurisdiction of the federal court was maintained on two grounds: (1) That the state was not in fact a party; and (2) because the act of the defendants complained of was in contravention of section 10, art. 1, of the constitution of the United States. The answer filed in this case prior to the motion to remand makes allegations tending to show that the plaintiffs' contention and demand is violative of defendant's contractual rights, which the constitution will protect. But the removal here was not predicated of this defense. Since that decision the precise question, in legal effect, raised by this motion to remand, came before the supreme court in Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047. Reagan, McLean, and Foster were railroad commissioners of the state of Texas, and Culberson was the attorney general of the state. Under a statute similar to that of Missouri the commissioners made certain classifications of freights, and established certain rates for the government of railroads in the state, which regulations the commissioners and the attorney general were threatening to enforce. The complainant, representing the mortgagees of the road, brought its bill in equity against the commissioners and the attorney general to prevent them from putting into operation and enforcing the tariff rates. Objection was raised to the jurisdiction of the federal court on the ground that the suit was, in effect, against the state of Texas. This contention was overruled by the supreme court, and in language so explicit as to leave

no doubt as to the meaning of the court touching this vexed question. Mr. Justice Brewer, who delivered the unanimous opinion of the court, said:

"We are unable to yield our assent to this argument. So far from the state being the only real party in interest, and upon whom alone the judgment effectively operates, it has, in a pecuniary sense, no interest at all. Going back of all matters of form, the only parties pecuniarily affected are the shippers and the carriers, and the only direct pecuniary interest which the state can have arises when it abandons its governmental character, and, as an individual, employs the railroad company to carry its property. There is a sense, doubtless, in which it may be said that the state is interested in the question, but only a governmental sense. It is interested in the well-being of its citizens, in the just and equal enforcement of all its laws; but such governmental interest is not the pecuniary interest which causes it to bear the burden of an adverse judgment. Not a dollar will be taken from the treasury of the state, no pecuniary obligation of it will be enforced, none of its property affected, by any decree which may be rendered. It is not nearly so much affected by the decree in this case as it would be by an injunction against officers staying the collection of taxes, and yet a frequent and unquestioned exercise of jurisdiction of courts, state and federal, is in restraining the collection of taxes illegal in whole or in part."

Further on the court said:

"Nor can it be said in such a case that relief is obtainable only in the courts of the state; for it may be laid down as a general proposition that, whenever a citizen of a state can go into the courts of a state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. A state cannot tie up a citizen of another state, having property rights within its territory invaded by unauthorized acts of its own officers, to suits for redress in its own courts. Given a case where a suit can be maintained in the court of the state to protect property rights, a citizen of another state may invoke the jurisdiction of the federal courts."

The petition in the case at bar discloses on its face that the commissioners are seeking by this action to protect the interests of individual patrons of the defendant road. It states, as the instigating cause of the action taken by the commissioners, "that informal complaints have heretofore been made to plaintiffs * * * that arbitrary, illegal, and improper charges have been made by said defendant for carrying passengers and freight over that portion of the defendant's road which passes over said bridge." The state statute (section 2653, Rev. St. Mo. 1889) under which the railroad commissioners assume to act opens with this language: "Where the complaint involves a private or public question, as aforesaid," the commissioners may take action. This statute likewise authorizes private citizens having grievances touching undue exactions by any railroad to institute proceedings before the commissioners, or the commissioners, upon complaint, may proceed in their behalf, as the matter involved is in a certain sense a public question. But the commissioners determine for themselves whether or not the complaint is worthy of their attention and investigation; and, as is well known, the commissioners, in making such investigations, call before them the aggrieved citizens, and hear their complaints, as well as the suggestions of the defendant company, and then decide what action in the premises shall be taken. But whether they initiate the investigation and rearrange the traffic rates at the instance of complaining private

patrons of the road, or sua sponte, it is nevertheless in a certain sense a public question, as the state, in the language of Mr. Justice Brewer, is "interested in the question, but only in a governmental sense. It is interested in the well-being of its citizens, in the just and equal enforcement of all its laws; but such government interest is not the pecuniary interest which causes it to bear the burden of an adverse judgment." It would not be seriously contended, I take it, that if, after the commissioners had established a given tariff schedule, a private citizen were to bring an action to enforce compliance with the regulations, a nonresident defendant railroad company could not remove such action from the state into the United States court, if the requisite jurisdictional amount were involved in the controversy. What difference, therefore, in principle, can it make that the commissioners of their own motion institute the proceedings? In either case the real party in immediate interest is the patron or patrons affected by the exactions imposed by the road. Mr. Justice Brewer again effectually disposes of this question by saying:

"Going back of all matters of form, the only parties pecuniarily affected are shippers and carriers, and the only direct pecuniary interest which the state can have arises when it abandons its governmental character, and as an individual employs the railroad company to carry its property."

It is suggested, however, that this case is to be differentiated from the Texas case, in that there is a provision in the Texas statute which authorizes any railroad company or other party in interest dissatisfied with the decision of any rate, regulation, etc., adopted by the commissioners, to file a petition for relief "in Travis county, Texas, against said commission as defendant," from which the conclusion is sought to be drawn that the state having thereby, in effect, consented that its commissioners might be sued, constituted the basis of the ruling of the supreme court. It is true that Mr. Justice Brewer, arguendo, adverted to said provision of the statute, but he most distinctly announced that such fact did not control the ruling of the court. After suggesting that the reservation contained in the eleventh amendment to the federal constitution could be waived by the state, and that possibly it had done so by said statute, as if apprehensive that the court might be understood as placing its decision as to jurisdiction upon that ground, he distinctly said:

"However, it is unnecessary to go so far as that, for this cannot, for the reasons heretofore indicated, in any fair sense be considered a suit against the state."

Again, it is suggested that inasmuch as the state appropriates money to aid in the prosecution of such suits by the commissioners, in paying expenses and costs, it has a direct interest in such litigation. The statute relied upon directs that such expenses and costs may be paid upon the requisition of the commissioners, after auditing by the state auditor, subject to the approval by the governor, and payable out of any moneys in the treasury "not otherwise appropriated." There are several conclusive answers to this suggestion. In the first place, should the commissioners fail in any such action, the judgment for costs would not be against the state of Missouri,

but solely against the plaintiffs. It could not be executed if given against the state, for the palpable reason that the state has made no provision therefor and has not consented thereto. The payment of such costs would be entirely optional with the state. The legislative branch might not make any appropriation therefor, and the governor might not approve the account. The defendant would have no remedy either to compel the legislature or the chief executive of the state to act. The state therefore can in no legal sense be said to have any direct pecuniary interest in this suit, which must be understood to mean an interest in the fruits of pending litigation which are to inure directly to its benefit. It cannot by any refinement of argument be made to depend upon the question of the remote possibility of one party or the other voluntarily assuming the payment of costs of the litigation. The state might, pro bono publico, consent to pay the costs which any private citizen should incur in the prosecution of an action to enforce the provisions of the regulations made by the commissioners to compel their observance by the railroad. Could it be maintained that, because of such assumed undertaking by the state, it thereby became so far a party to the suit as to deny the jurisdiction of the federal court when a nonresident defendant sought to remove such controversy into the United States court? The defendant would be remediless to enforce against the state any such provisions without its express consent. The legislatures of all the states having like statutes provide funds for the use of the commissioners in performing the duties of their office, but it never occurred to the supreme court of the United States, or any of the very learned lawyers engaged in such litigation as this, that such fact could affect the question of jurisdiction.

The final contention in support of this motion is that inasmuch as the statute provides that after the commissioners have established a schedule of rates, if the railroads refuse to comply therewith, the commissioners may proceed by injunction or mandamus against the nonconforming roads to compel obedience, and the courts may impose certain fines and penalties upon the roads, which fines shall inure to the benefit of the school fund, therefore the state has such pecuniary interest in this suit as to constitute it a party, within the meaning of the eleventh amendment. This suggestion cannot command my assent. Such subsequent proceedings, from which such penalties could result, do not inhere in the pending action at bar. They would be essentially contingent and separate. The subsequent action might never arise, as the defendant company might conform. It would also be entirely optional with the railroad commissioners, and any individual interested who is equally authorized to institute such proceedings, whether or not they would ask the court to proceed summarily against the offending roads. Independent of any statutory provision, the state court, in the exercise of its inherent power, could impose a fine for the violation of such injunction, in a contempt proceeding; and such fine, under the general law of the state, would go to the state. And, if this fact suffices to constitute the state a party in the original injunction suit, then by the same logic might it be maintained that the state, in legal contemplation, is a party to

every civil suit of injunction. The sole issue tendered by the pleadings in this case is to have determined the validity of the rates imposed by the commissioners, in which the state has no direct pecuniary interest, as held by the supreme court in the Texas case. The statute of the state of Texas contains a similar provision, subjecting the offending road to a forfeiture of money, to go to the state of Texas. This provision of the Texas statute is incorporated in the statement of facts in the Reagan Case, 154 U. S. 365, 366, 14 Sup. Ct. 1047, and was therefore before the eyes of the court in deciding that case. Neither the attorney general of the state nor the court considered that fact as affecting or bearing upon the jurisdictional question involved. This question again came before the supreme court in the Nebraska case (Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418), which brought the railroad transportation commissioners, the state officers, into the United States court to test the validity of the rates established by the commissioners of that state. The question was again raised that the state, in effect, was a party. But the able lawyers concerned in the cause did not express faith enough in the proposition to present it in other than the most perfunctory way, and the court disposed of it as a question that had passed in rem judicatam. The court predicated jurisdiction on the ground of diverse citizenship, as well as the fact of a federal constitutional question being involved. Page 518, 169 U. S., and page 423, 18 Sup. Ct. The Nebraska statute, present before the court, as shown by the statement of facts (pages 475, 476, 169 U. S., and page 420, 18 Sup. Ct.), contains a similar provision for heavy fines, to the use of the state, for violation of the regulations established by the commissioners.

The question here involved is essentially a federal question (Oakley v. Goodnow, 118 U. S. 43, 6 Sup. Ct. 944), on which the decisions of the supreme court of the United States are controlling, and this court must follow them. When the petition for removal, with the record in the case, disclosed the facts which showed the right of removal, and the proper bond was filed in the state court, the cause stood practically removed, and the jurisdiction of the state court ceased at once. Railroad Co. v. Koontz, 104 U. S. 5. No order of the state court was necessary to effectuate the removal. Kern v. Huidekoper, 103 U. S. 485. After the state court refused to remove the cause, the defendant was authorized by the act of congress to obtain a certified copy of the record of the state court and docket the case in this court; and his subsequent appearance in the state court and in the supreme court in the action taken by him therein constituted no waiver of the act of removal, nor prejudiced his right to proceed in this court. Insurance Co. v. Dunn, 19 Wall. 214; Removal Cases, 100 U. S. 457; Kern v. Huidekoper, supra. Therefore all the proceedings taken by plaintiffs in the state court after the removal was effected were coram non judice and absolutely void, for the obvious and conclusive reason that the "controversy" between the parties was then removed into the United States court, there to remain until finally determined. Railroad Co. v. Fulton (Ohio Sup.) 53 N. E. 265; Cox v. Railroad Co., 68 Ga. 448. When a petition for

removal is filed in the state court, the only question left for that court to determine is one of law,—whether, admitting the facts stated in the petition to be true, it appears on the face of the record, including the petition, the pleadings, and proceedings to that date, that the petitioner is entitled to removal, "and, if an issue of fact is made upon the petition, that issue must be tried in the United States circuit court." Railway Co. v. Dunn, 122 U. S. 513, 7 Sup. Ct. 1262. It results that the motion to remand is overruled.